In the Termination of the Parent-Child
Relationship of N.C. and A.C.;
A.C., Appellant(s),

v.

**INDIANA DEPARTMENT OF CHILD
SERVICES; Child Advocates,
Inc., Appellee(s).**

Court of Appeals Case No.
49A02-1510-JT-01711

Supreme Court of Indiana.

December 1, 2016

Trial Court Case No. 49D09-1405-JT-216

Order

This matter has come before the Indiana
Supreme Court on a petition to transfer
jurisdiction, filed pursuant to Indiana Ap-
pellate Rules 56(B) and 57, following the
issuance of a decision by the Court of
Appeals. The Court has reviewed the deci-
sion of the Court of Appeals, and the
submitted record on appeal, all briefs filed

in the Court of Appeals, and all materials filed in connection with the request to transfer jurisdiction have been made available to the Court for review. Each participating member has had the opportunity to voice that Justice's views on the case in conference with the other Justices, and each participating member of the Court has voted on the petition.

Being duly advised, the Court DENIES the petition to transfer.

Rush, C.J., and Massa and Slaughter, JJ., concur.

David, J., dissents with separate opinion in which Rucker, J., concurs.

Rucker, J., concurs.

David, Justice, dissenting.

I respectfully dissent from the denial of transfer in this case as I believe this Court should grant transfer and address the Americans with Disabilities Act (ADA) issue to provide further guidance and to expressly overrule part of the holding in Stone v. Daviess Cnty. Div. of Children and Family Srvs., 656 N.E.2d 824 (Ind. Ct. App. 1995).

Let me first make it clear that I acknowledge that pursuant to our statutes, the Indiana Department of Child Services (DCS) is not required to provide services to parents prior to seeking termination of parental rights. I further acknowledge that there may be times when providing such services would be fruitless. It is not my intent to require DCS to provide services in all cases. Nevertheless, I recognize that DCS often does provide services to parents, and that often, parents must complete such services pursuant to the court's dispositional order in child in need of services (CHINS) cases, which are the precursor to termination. Some of the parents that DCS provides services to are disabled, and it is my belief that, generally, DCS provides reasonable accommodations to these parents. I believe that is true in the current case.

I seek only to clarify the law on when a disabled parent may use DCS' failure to comply with the ADA as a defense in a termination action. Specifically, it seems to me that if DCS would be required to comply with the ADA when it provides mandatory services and failure to do so could be a defense to a termination action, then when DCS uses its discretion to provide services, it must also comply with the ADA, and accordingly, a disabled parent could raise failure to comply as a defense to a termination action.

Turning to the current case, in reaching its decision that Father could not use DCS' alleged failure to comply with the ADA as a defense to the termination of his parental rights, our Court of Appeals relied upon and cited Stone. Specifically, it quoted Stone for the proposition that:

> If our termination statute required that services be provided to all parents prior to the termination of parental rights, under the doctrine of preemption an ADA violation by the [DCS] in fulfilling that statutory duty would provide grounds for attacking a termination pursuant to the statute. Such services, however, are not required in Indiana.

N.C. v. Indiana Dep't of Child Servs., 56 N.E.3d 65, 70 (Ind. Ct. App. 2016) (quoting Stone, 656 N.E.2d at 830). I agree with that portion of Stone.

I also agree with the portion of Stone that provides: "[a]side from the operation of our termination statute, once the agency opts to provide services during the CHINS proceedings to assist parents in improving parental skills, the provision of those services must be in compliance with the ADA." Stone at 830,. Finally, as I noted above, I agree with the Court of Appeals

that under the facts and circumstances of this case, DCS reasonably accommodated Father.

However, despite the <u>Stone</u> court acknowledging the fact that if DCS was required to provide services, it would have to comply with the ADA and non-compliance could be used as a grounds for challenging termination of a disabled parents' parental rights, and also acknowledging that to the extent that DCS provides discretionary services, it must comply with the ADA in the provision of those services, it nevertheless concluded that: "any alleged noncompliance with the ADA by [DCS] in the provision of services . . . would be a matter separate and distinct from the operation of our termination statute." <u>Id.</u> It is this portion of <u>Stone</u> that I believe needs to be overruled.

In my view, whether DCS is required to provide services or merely exercises its discretion to do so makes no difference; in either case, if DCS is, in fact, providing services it must comply with the ADA *and* failure to comply with the ADA should be grounds to challenge the termination proceeding. To hold otherwise would deny disabled parents meaningful relief. As the Utah Supreme Court aptly stated:

> [W]e also reject the notion, embraced by a number of courts, that the ADA may be invoked only as a separate cause of action in an independent proceeding— and not as a defense or other means of altering a service plan by a parent in a termination proceeding. An independent claim for damages would be an inadequate remedy for alleged discrimination in the provision of reunification services for a parent, especially given the fundamental right to parent at stake in such proceedings. The ADA protects a right not to "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public enti-

ty." 42 U.S.C. § 12132. To make that right a reality, the ADA should be read to guarantee a right to raise this provision while the reunification plan is being implemented—and not just after the fact in a claim for money damages.

State in Interest of K.C., 2015 UT 92, ¶ 21, 362 P.3d 1248, 1252–53.

I agree with the Utah Supreme Court and believe this Court should adopt a similar approach. Accordingly, I dissent from the denial of transfer. I would grant transfer and hold that a disabled parent may use non-compliance with the ADA as a defense to the termination of his or her parental rights where DCS has provided discretionary services, but failed to provide reasonable accommodations to a disabled parent.